UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CHRISTOPHER L. ENGLISH                                        CIVIL ACTION

VERSUS                                                                    NO. 11-1602

PATRICK C. ALBERS ET AL.                                     SECTION "B" (2)

## REPORT AND RECOMMENDATION

Plaintiff, Christopher L. English, is a prisoner currently incarcerated in the B.B. (Sixty) Rayburn Correctional Center ("Rayburn") in Angie, Louisiana.  He filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 against Rayburn Correctional Officer Patrick C. Albers and Warden Robert C. Tanner.  English alleges that he was falsely accused of a prison disciplinary rule violation, which resulted in his placement in lockdown.  He seeks injunctive relief.  Record Doc. No. 1 (Complaint at ¶¶ IV and V).

On September 6, 2011, I conducted a telephone conference in this matter. Participating were plaintiff pro se and Jonathan Vining, counsel for defendants.  Plaintiff was sworn and testified for all purposes permitted by Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985), and its progeny.

## THE RECORD

English testified that he is currently incarcerated based upon a conviction on May 10, 2010, for a sex offense involving a juvenile and aggravated incest, for which he is serving a sentence of 15 years in prison. He confirmed that he asserts a single claim in this case that he was falsely accused and convicted of a disciplinary rule violation in the Rayburn Correctional Center on May 31, 2011 and that he was placed in disciplinary lockdown and the "working cell block" as punishment.

English testified that on that date he was lying in his bunk and "talking low" with a cellmate because it was after "rackdown" when Anita Turnage, a female corrections officer at the jail, "come around and she was supposed to . . . bring [me some] contraband." Plaintiff alleged that he had arranged with Turnage to bring him contraband, specifically, two hamburgers and two drinks, so when she passed near his cell he asked her where his "stuff" was, but she merely flicked her hand at him and walked away. English said that he had made some items for Turnage in "hobby craft," which he gave to her in exchange for her promise to bring him the contraband food and drink. He alleged that Turnage did not bring him the contraband and that when Turnage ignored his questions about where his "stuff" was, he "called her back," and started asking her about rumors of the prison closing and officers getting fired. He said his cellmate woke up and all of them became involved in the conversation, until Turnage walked away.

2

English stated that within about five minutes, Turnage stopped on the other side of the dorm, looked at him, and then defendant Corrections Officer Albers approached him, called him names and "walked me out" of the cell. He testified that Albers told him that Turnage had accused English of "trying to commit this 21e all night long." Asked what a "21e" is, English testified that it is a prison disciplinary rule prohibiting "exposing genitals or masturbating in front of free people or non-incarcerated people." He clarified that this was the disciplinary rule he was accused of "trying to" violate "all night long." English flatly denied that he had violated the disciplinary rule and said that the entire incident concerning Turnage could be seen on a prison camera surveillance tape.

English testified that he received from Albers a written charge concerning his alleged attempted violation of Disciplinary Rule 21e.  He stated that he appeared at a disciplinary hearing and initially requested that a ruling be deferred until the surveillance film could be reviewed "on my behalf." He stated that the disciplinary board deferred its decision, and he was returned to appear again before the board on the following day, after the board had reviewed the surveillance film and determined that it was "inconclusive." English said the camera technician had advised the disciplinary board that English never exposed himself, but that the only thing he exposed had been his left leg. English testified that, nevertheless, the disciplinary board found him guilty of attempting to violate Disciplinary Rule 21e, finding that English had his hands under his covers and it "could

have been construed that I was trying to do something." English stated that Albers had falsely alleged in the disciplinary writeup that he saw English expose himself.

English reiterated that he did have a disciplinary hearing concerning this charge and that he was represented at the hearing by inmate counsel. He confirmed that he was provided an opportunity to make a statement on his own behalf at the hearing. He said he was orally advised during the hearing by one of the disciplinary board members that they had reviewed the surveillance tape and that it was "inconclusive." He identified the disciplinary board members as two prison ranking officers and two other individuals whose positions he did not know.

Asked what the result of the hearing was, English said, "they gave me the working cell block and sent me to lockdown," after finding him guilty of the disciplinary rule violation.  He said his punishment is supposed to last "six months on this type of violation, but . . . they stopped me from going to college, they stopped me from participating in self-help programs . . . I was in the process of going to vo-tech and college, and this stopped all that." He said the confinement in the working cell block means that he must perform physical labor if there is work to do, he cannot smoke or go outdoors for recreation and he must be shackled and hand-cuffed everywhere he goes. He said being in disciplinary lockdown means he is confined to a two-man cell, he cannot be in the general prison population, and he cannot go outdoors except for one hour a day. He complained that being deprived of participation in self-help and educational programs

4

was the principal punishment about which he complains, and that he now has this disciplinary violation on his record, which will be reviewed in the event he comes up for parole, "which makes you look bad . . . that's what I'm trying to prevent, this being on my record, because I'm already locked up for this type of . . . this nature [sex offense] crime. . . . I don't need this on my record."

English confirmed that he suffered no physical injuries as a result of this incident, but he alleged that Albers has subsequently threatened him verbally as a result of filing this lawsuit. He stated that he remains in the working cell block at this time.  He complained that the actions of both Turnage and Albers constituted "malfeasance of office."  English said that Turnage did not follow "protocol" in that she should have reported any alleged incident herself on her beeper, and he alleged that Turnage "just got mad" because English was asking her questions.  He repeated that Albers lied about what English had done.  He argued that he was innocent, that the surveillance camera did not capture him on film exposing himself, and that the disciplinary board accepted Albers' false allegations anyway.

## **ANALYSIS**

### I.   STANDARDS OF REVIEW

A prisoner's pro se complaint for alleged civil rights violations must be screened by the court as soon as practicable after docketing, regardless whether it has also been filed in forma pauperis.  28 U.S.C. § 1915A(a); Lewis v. Estes, 242 F.3d 375, 2000 WL

1673382, at *1 (8th Cir. 2006); Shakur v. Selsky, 391 F.3d 106, 112 (2d Cir. 2004); Martin v. Scott, 156 F.3d 578, 579-80 (5th Cir. 1998). Such complaints by prisoners must be dismissed upon review if they are frivolous or fail to state a claim upon which relief can be granted. 28 U.S.C. § 1915A(b)(1); Shakur, 391 F.3d at 113; Carr v. Dvorin, 171 F.3d 115, 116 (2d Cir. 1999).

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'" Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended). A complaint is frivolous "if it lacks an arguable basis in law or fact." Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994). The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'" Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

The purpose of a Spears hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims. Spears, 766 F.2d at 180. "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." Davis, 157 F.3d at 1005. The information elicited at

6

such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e).  Wilson v. Barrientos, 926 F.2d 480, 481 (5th Cir. 1991); Adams v. Hansen, 906 F.2d 192, 194 (5th Cir. 1990).  "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists."  Spears, 766 F.2d at 182.

After a Spears hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, Jackson v. Vannoy, 49 F.3d 175, 176-77 (5th Cir. 1995); Moore v. Mabus, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible."  Id. at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'"  Davis, 157 F.3d at 1005 (quoting McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997)).  "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not."  Moore, 976 F.2d at 269.  A prisoner's in forma pauperis complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, plaintiff's complaint must be dismissed under 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997e(c)(1), either as frivolous because it lacks an arguable basis in law or under Rule 12(b)(6) in light of his testimony explaining the factual basis of his claims. Plaintiff's complaint, as amended by his testimony at the <u>Spears</u> hearing, fails to state a cognizable claim of violation of his constitutional rights, even under the broadest reading.[1]

II.   <u>FALSE DISCIPLINARY REPORT</u>

To whatever extent, if any, that plaintiff may be claiming that his due process rights were violated based on false disciplinary charges which resulted in his placement in lockdown or the working cell block, he fails to state a claim of violation of his constitutional rights.

In <u>Sandin v. Connor</u>, 515 U.S. 472, 481-83 (1995), the United States Supreme Court held that analysis of a prisoner's due process claim relating to his placement in lockdown or other denial of prison privileges as disciplinary punishment begins with determining whether a constitutionally protected liberty interest exists. "Liberty interests protected by the Fourteenth Amendment may arise from two sources–the Due Process Clause itself and the laws of the States." <u>Hewitt v. Helms</u>, 459 U.S. 460, 466 (1983). In <u>Sandin</u>, the Supreme Court recognized that, although the States may create liberty

---

[1]Pro se civil rights complaints must be broadly construed, <u>Moore</u>, 30 F.3d at 620, and I have broadly construed the complaint in this case.

interests, "these interests will generally be limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." <u>Sandin</u>, 515 U.S. at 484 (citations omitted).  Thus, in <u>Sandin</u>, when a prisoner was placed in disciplinary segregation for 30 days and the placement did not inevitably affect the duration of his sentence, the Court held that due process does <u>not</u> require that a prisoner be afforded the procedural mechanisms previously prescribed in <u>Wolff v. McDonnell</u>, 418 U.S. 539 (1974), and <u>Hewitt</u>, 459 U.S. at 460.

"[T]he Due Process Clause does not protect every change in conditions of confinement which has a substantial adverse effect upon a prisoner." <u>Madison v. Parker</u>, 104 F.3d 765, 767 (5th Cir. 1997).  "Prisoners held in lawful confinement have their liberty curtailed by definition, so the procedural protections to which they are entitled are more limited than in cases where the right at stake is the right to be free from confinement at all." <u>Wilkinson v. Austin</u>, 545 U.S. 209, 225 (2005) (citations omitted). The Fifth Circuit in <u>Madison</u> held that a prisoner's 30-day commissary and cell restrictions imposed as punishment for disciplinary violations were "merely changes in the conditions of his confinement and do not implicate due process concerns." <u>Madison</u>, 104 F.3d at 768; <u>accord</u> <u>Hernandez v. Velasquez</u>, 522 F.3d 556, 563 (5th Cir. 2008); <u>Dixon v. Hastings</u>, 117 Fed. Appx. 371, 2005 WL 17382, at *1 (5th Cir. 2005); <u>Malchi v. Thaler</u>, 211 F.3d 953, 957-58 (5th Cir. 2000).  In <u>Hernandez</u> and <u>Madison</u>, the Fifth Circuit held that such restrictions do <u>not</u> represent the type of atypical, significant

deprivation in which a state might create a liberty interest.  <u>Hernandez</u>, 522 F.3d at 563;

<u>Madison</u>, 104 F.3d at 768.

Examples of prison hardships that <u>would</u> qualify as so atypical and significant as to implicate due process considerations include unwanted administration of anti-psychotic drugs, involuntary commitment to a mental hospital or extension of the prisoner's sentence for his underlying criminal conviction.  <u>Sandin</u>, 515 U.S. at 484.

In the instant case, English's testimony and his written submissions establish that the only action taken against him based upon the allegedly false assertions of Albers and/or Turnage were his loss of the privileges of participation in educational or self-help programs, outdoor recreation, placement in the general prison population and smoking, together with his transfer to the "working cellblock" of the prison.  None of these actions constitute such an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" that particular forms of process of the type described in <u>Wolff</u> were required.  <u>Sandin</u>, 515 U.S. at 484; <u>Madison</u>, 104 F.3d at 768; <u>see Johnson v. Livingston</u>, 360 F. App'x 531, 532 (5th Cir. 2010) (citing <u>Malchi v. Thaler</u>, 211 F.3d 953, 958 (5th Cir. 2000)) ("Loss of privileges and cell restriction do not implicate due process concerns."), <u>petition for cert. filed</u>, (U.S. May 8, 2010) (No. 09-10742); <u>Hernandez</u>, 522 F.3d at 563 (distinguishing the "extreme conditions" described in <u>Wilkinson</u> and holding that non-disciplinary "confinement to a shared cell for twelve months with permission to leave only for showers, medical appointments and family

visits . . . is by no means an atypical prison experience"); <u>Dixon</u>, 117 F. App'x at 372 ("loss of commissary privileges, cell restriction, placement in administrative segregation, and extended work schedule were not atypical punishments requiring due process protections"); <u>Payne v. Dretke</u>, 80 F. App'x 314, 314 (5th Cir. 2003) ("commissary and recreation restrictions [as disciplinary punishment] . . . do not implicate a liberty interest under the Due Process Clause").

In addition, inmates have no protected liberty interest in specific educational, rehabilitative or self-improvement opportunities. <u>Lato v. Attorney Gen.</u>, 773 F. Supp. 973, 978 (W.D. Tex. 1991). "[A] state has no constitutional obligation to provide basic educational or vocational training to prisoners." <u>Beck v. Lynaugh</u>, 842 F.2d 757, 762 (5th Cir. 1988) (citing <u>Newman v. Alabama</u>, 559 F.2d 283, 292 (5th Cir. 1977), <u>rev'd in part on other grounds sub nom.</u> <u>Alabama v. Pugh</u>, 438 U.S. 781 (1978)); <u>accord</u> <u>Miles v. Windham Sch. Dist.</u>, 78 F. App'x 418, 419 (5th Cir. 2003); <u>Honshul v. Foti</u>, 51 F.3d 1045, 1995 WL 153425, at *2 (5th Cir. 1995). Moreover, inmates have no protected liberty interest in specific recreational opportunities and the "[d]eprivation of exercise is not a <u>per se</u> constitutional violation." <u>Lewis v. Smith</u>, 277 F.3d 1373, 2001 WL 1485821, at *1 (5th Cir. 2001) (citing <u>Stewart v. Winter</u>, 669 F.2d 328, 336 n.19 (5th Cir. 1982); <u>Miller v. Carson</u>, 563 F.2d 741, 751 n.12 (5th Cir. 1977)); <u>accord</u> <u>Sampson v. Corrections Corp.</u>, No. 08-CV-0915, 2009 WL 837640, at *16 (W.D. La. Mar. 26, 2009) (Drell, J.) (citing <u>Smith v. Boyd</u>, 945 F.2d 1041, 1043 (8th Cir. 1991); <u>Beck v. Lynaugh</u>,

842 F.2d 757, 762 (5th Cir. 1988); Lato v. Attorney Gen., 773 F. Supp. 973, 978 (W.D. Tex. 1991)).  Thus, English's complaint that his punishment for violation of the disciplinary rule including a limitation on his ability to go outdoors for any more than one hour a day does not rise to the level of a constitutional violation.  No claim of violation of due process rights cognizable under Section 1983 can be stated as to these matters.

Even if some process might be required for these sorts of prison disciplinary penalties, it is clear that English received the full panoply of procedural rights contemplated by Wolfe.  He was given a written statement notifying him of the charge against him.  He received a hearing before the disciplinary board.  He was represented by inmate counsel and was provided with an opportunity to make a statement on his own behalf.  The disciplinary board reviewed evidence (the surveillance film) upon his request.

The thrust of English's complaint appears to be that, as a matter of fact-finding and credibility choice, the disciplinary board did not accept his argument that the surveillance film was not incriminating and that Albers should not be believed.  In other words, he argues that this court should substitute its view of the weight or credibility of the evidence for that of the prison disciplinary board. Courts accord great deference to prison officials' administrative decisions and should not interfere with legitimate prison administration, including the substantial interest in maintaining prison order and

discipline, in the absence of a constitutional violation.  <u>Bell</u>, 441 U.S. at 547-48; <u>Smith v. Bingham</u>, 914 F.2d 740, 742 (5th Cir. 1990).  Section 1983 claims are <u>not</u> bases for an inmate's appeal of the fact-findings of a prison disciplinary board.  Such claims may proceed only where a showing of a constitutional violation has adequately been asserted.  No such violation has been stated in this case.

III.   <u>VERBAL THREATS</u>

Plaintiff's allegations that Officer Albers verbally threatened him after he filed this lawsuit or made other derogatory remarks to him are not cognizable under Section 1983.  <u>Robertson v. Plano City</u>, 70 F.3d 21, 24 (5th Cir. 1995).  The <u>Robertson</u> court noted that "in the Eighth Amendment context, 'mere threatening language or gestures of a custodial officer do not, even if true, amount to constitutional violations.'" <u>Id.</u> (citation omitted); <u>accord</u> <u>Watson v. Winborn</u>, No. 02-10984, 67 Fed. Appx. 241, 241 (5th Cir. 2003); <u>Calhoun v. Hargrove</u>, 312 F.3d 730, 734 (5th Cir. 2002); <u>Vessell v. Gusman</u>, No. 06-2294, 2006 WL 2067723, at *2 (E.D. La. July 19, 2006) (McNamara, J.) (citing <u>Calhoun</u>, 312 F.3d at 734; <u>Siglar v. Hightower</u>, 112 F.3d 191, 193 (5th Cir. 1997); <u>Bender v. Brumley</u>, 1 F.3d 271, 274 n.4 (5th Cir. 1993)).

"Claims of hurt feelings, humiliation, and other heartfelt, yet objectively trivial indignities, are not of Constitutional moment . . . ."  <u>Jackson v. Liberty County</u>, 860 F. Supp. 360, 363 (E.D. Tex. 1994). "Verbal harassment and abusive language, while unprofessional and inexcusable, are simply not sufficient to state a constitutional claim

under 42 U.S.C. § 1983." <u>Slagel v. Shell Oil Refinery</u>, 811 F. Supp. 378, 382 (C.D. Ill. 1993), <u>aff'd</u>, 23 F.3d 410 (7th Cir. 1994).  In this case, plaintiff's allegations of verbal abuse do not rise to the level of a constitutional violation, and these allegations fail to state a claim upon which relief may be granted.

IV.   <u>NO LIABILITY OF THE WARDEN</u>

     English also names Rayburn Warden Robert Tanner as a defendant.  However, he makes no claim that Warden Tanner was personally involved in any of the alleged acts or omissions upon which his claims are based.  "There is no respondeat superior liability under section 1983." <u>Eason v. Thaler</u>, 73 F.3d 1322, 1327 (5th Cir. 1996); <u>accord</u> <u>Field v. Corrections Corp.</u>, 364 F. App'x 927, 2010 WL 517679, at *1 (5th Cir. 2010); <u>Cox v. Irby</u>, 281 F. App'x 390, 391 (5th Cir. 2008); <u>Kohler v. Englade</u>, 470 F.3d 1104, 1114-15 (5th Cir. 2006).  Thus, this defendant cannot be held liable under Section 1983 pursuant to a theory of respondeat superior simply because the persons allegedly responsible for plaintiff's injury, if any, were in his employ or under his supervision.  <u>Sanders v. English</u>, 950 F.2d 1152, 1160 (5th Cir. 1992); <u>Baskin v. Parker</u>, 602 F.2d 1205, 1208 (5th Cir. 1979); <u>Barksdale v. King</u>, 699 F.2d 744, 746 (5th Cir. 1983).

     To hold this defendant liable, plaintiff must establish either that he was "personally involved in the acts causing the deprivation of his constitutional rights or that a causal connection exists between an act of [this defendant] . . . and the alleged constitutional violation." <u>Douthit v. Jones</u>, 641 F.2d 345, 346 (5th Cir. 1981); <u>accord</u>

Cox, 281 F. App'x at 391 ; Kohler, 470 F.3d at 1115. "It is facially evident that this test

cannot be met if there is no underlying constitutional violation." Rios v. City of Del Rio,

444 F.3d 417, 425-26 (5th Cir. 2006) (citing Breaux v. City of Garland, 205 F.3d 150,

161 (5th Cir. 2000)).  In the instant action, plaintiff has failed to establish either that this

defendant was personally involved in any acts causing the deprivation of his

constitutional rights or that a causal connection exists between an act of this defendant

and the alleged constitutional violation.

A supervisory official may be held liable for his subordinates' actions only if the

official implemented an unconstitutional policy that causally resulted in plaintiff's injury.

Monell v. Dep't of Social Servs., 436 U.S. 658, 691-95 (1978); Thompson v. Johnson,

348 F. App'x 919, 921 (5th Cir. 2009) (citing Mouille v. City of Live Oak, 977 F.2d 924,

929 (5th Cir. 1992)); Gates v. Texas Dep't of Protective & Regulatory Servs., 537 F.3d

404, 435 (5th Cir. 2008). Without alleging a particular custom, usage or policy for which

the warden can be held constitutionally liable, plaintiff fails to state a claim for relief

under Section 1983.  Monell, 436 U.S. at 691-95; Thompson, 348 F. App'x at 921-22;

Mouille, 977 F.2d at 929.

"To hold a supervisory official liable for the acts of a subordinate, English must

show that "(1) the supervisor either failed to supervise or train the subordinate official;

(2) a causal link exists between the failure to train or supervise and the violation of the

plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate

indifference." <u>Smith v. Brenoettsy</u>, 158 F.3d 908, 911-12 (5th Cir.1998).  To state a failure to protect claim under § 1983, English must show that he is incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection.  <u>Neals v. Norwood</u>, 59 F.3d 530, 533 (5th Cir. 1995).  For an official to act with deliberate indifference for purposes of either claim, he "must both be aware of facts from which the inference could be drawn that substantial risk of serious harm exists, and he must also draw the inference." <u>Farmer v. Brennan</u>, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)." <u>Payne v. Pickett</u>, 246 Fed. Appx. 884, 889-90, 2007 WL 2537839, *5 (5th Cir. 2007).

Under these standards, neither English's testimony nor his written submissions in this case are adequate to state a cognizable constitutional claim against Warden Tanner.

## RECOMMENDATION

For all of the foregoing reasons, it is **RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served

with notice that such consequences will result from a failure to object.  Douglass v.

United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28

U.S.C. § 636(b)(1)).[2]

New Orleans, Louisiana, this ____19th____ day of September, 2011.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[2]Douglass referred to the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.

17